CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS** 2011 APR 12 PM 2: 05
**LUBBOCK DIVISION**

DEPUTY CLERK

| | |
|---|---|
| **DIVLEND EQUIPMENT LEASING, LLC** § | |
| *Plaintiff* § | **5 - 1 1 C V 0 0 7 3 - C** |
| § | |
| **v.** § | **Civil Action No. _____** |
| § | |
| **GEORGE ALCORN, DAVID BERRY,** § | |
| **DAVID BRITT, ABDUL BURIDI,** § | |
| **JEFFREY CAMPBELL, KEITH CARTER,** § | |
| **ALEXANDER DIGENIS, THOMAS** § | |
| **ECKERT, SATYA GARIMELLA,** § | |
| **EUGENE GILES, SHAWN GLISSON,** § | |
| **ELI HALLAL, JOHN HATEGAN,** § | |
| **AMY HALLAL HENDERSON, SAMER** § | |
| **HUSSEIN, ROBERT KARMAN,** § | |
| **LESLIE STROUSE MATTINGLY,** § | |
| **JOHN MCCONNELL, JULIO MELO,** § | |
| **CHARLES OATES,** § | |
| **BRIAN PARADOWSKI, RUKHSANA** § | |
| **RAHMAN, DENIS RALEIGH, SYED** § | |
| **RAZA, LAWRENCE ROUBEN, JOHN** § | |
| **RUMISEK, ANIL SHARMA, CHRIS** § | |
| **STAVENS, MIO STIKOVAC, BRIAN** § | |
| **THORNTON, KMC REAL ESTATE** § | |
| **INVESTORS, LLC, KENTUCKIANA** § | |
| **INVESTORS, LLC AND** § | |
| **CARDIOVASCULAR HOSPITALS OF** § | |
| **AMERICA, LLC** § | |
| *Defendants* § | |

## DEFENDANTS' JOINT NOTICE OF REMOVAL

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW GEORGE ALCORN, DAVID BERRY, DAVID BRITT, ABDUL BURIDI,

JEFFREY CAMPBELL, KEITH CARTER, ALEXANDER DIGENIS, THOMAS ECKERT,

SATYA GARIMELLA, EUGENE GILES, SHAWN GLISSON, ELI HALLAL, JOHN HATEGAN,

AMY HALLAL HENDERSON, SAMER HUSSEIN, ROBERT KARMAN, LESLIE STROUSE MATTINGLY, JOHN MCCONNELL, JULIO MELO, CHARLES OATES, BRIAN PARADOWSKI, RUKHSANA RAHMAN, DENIS RALEIGH, SYED RAZA, LAWRENCE ROUBEN, JOHN RUMISEK, ANIL SHARMA, CHRIS STAVENS, MIO STIKOVAC, BRIAN THORNTON, KMC REAL ESTATE INVESTORS, LLC, KENTUCKIANA INVESTORS, LLC, AND CARDIOVASCULAR HOSPITALS OF AMERICA, LLC, Defendants, and file this their Joint Notice of Removal of the above described action to the United States District Court for the Northern District of Texas, Lubbock Division, from the 237th Judicial District Court of Lubbock County, Texas, where the action is now pending, and state:

## I. INTRODUCTION

1.    On March 8, 2011, Plaintiff filed suit against the above named Defendants in the 237th District Court of Lubbock County, Texas. The suit is based on the alleged default on a lease for equipment between Plaintiff and Kentuckiana Medical Center, LLC. Plaintiff has sued all of the above named Defendants based on personal guarantees for the lease of equipment.

2.    Defendants Kentuckiana Investors, LLC and KMC Real Estate Investors, LLC were served with suit on March 14, 2011. Defendants file this notice of removal within the 30-day time period required by 28 U.S.C. § 1446(b).

## II. BASIS FOR REMOVAL

3.    Removal is proper because there is complete diversity between the parties. 28 U.S.C. § 1332(a). Plaintiff is a citizen of Texas. Defendant Kentuckiana Investors, LLC is a Delaware limited liability company. The members of Kentuckiana Investors, LLC consist of individuals who are all citizens of Kentucky and Indiana. No members of Kentuckiana Investors, LLC are citizens

of Texas. Defendant Cardiovascular Hospitals of America, LLC is a Delaware limited liability company. The members of Cardiovascular Hospitals of America, LLC consist of individuals who are citizens of Kansas, Kentucky, Iowa, Hawaii, Colorado, Massachusetts, Florida, California, Tennessee, South Carolina, New Hampshire, Ohio, and Ontario, Canada. No members of Cardiovascular Hospitals of America, LLC are citizens of Texas. Defendant KMC Real Estate Investors, LLC, is an Indiana limited liability company. The members of KMC Real Estate Investors, LLC consist of Cardiovascular Hospitals of America, LLC, Kentuckiana Investors, LLC, and individual members. All individual members of KMC Real Estate Investors, LLC are citizens of Kentucky and Indiana. The individual members of Cardiovascular Hospitals of America, LLC and Kentuckiana Investors, LLC are as set forth above. No members of KMC Real Estate Investors, LLC are citizens of Texas. Defendants George Alcorn, David Berry, Thomas Eckert, Eli Hallal, John Hategan, Amy Hallal Henderson, Leslie Strouse Mattingly, Brian Paradowski and Rukhsana Rahman are all citizens of Indiana. Defendants David Britt, Abdul Buridi, Jeffrey Campbell, Keith Carter, Alexander Digenis, Satya Garimella, Eugene Giles, Shawn Glisson, Samer Hussein, Robert Karman, John McConnell, Julio Melo, Charles Oates, Denis Raleigh, Syed Raza, Lawrence Rouben, John Rumisek, Anil Sharma, Chris Stavens, Mio Stikovac, and Brian Thornton are all citizens of Kentucky.

4.      Additionally, the amount in controversy exceeds $75,000.00, excluding interest and costs. 28 U.S.C. § 1332(a). Paragraph 43 of Plaintiff's Original Petition alleges that, as of December 15, 2010, there was due and owing by Defendants to Plaintiff the sum of $4,196,290.98.

5.      All named Defendants join in and consent to this Notice of Removal.

6.    Copies of all pleadings, process, orders, and other filings in the state court suit are attached to this notice as required by 28 U.S.C. § 1446(a).

7.    Defendants will promptly file a copy of this notice of removal with the clerk of the state court where the suit has been pending.

### III.  JURY DEMAND

8.    Plaintiff did not demand a jury in its Original Petition filed in the 237th District Court of Lubbock County, Texas.

**WHEREFORE PREMISES CONSIDERED**, Defendants respectfully pray that this Court assume full jurisdiction of this cause as if it had been originally filed here, and that further proceedings in the State Court be stayed.  Defendants further pray for such other and further relief to which they may be justly entitled.

Respectfully submitted,

JAMES L. WHARTON
State Bar No. 21243500
larry.wharton@jonesflygare.com
CHRISTOPHER B. SLAYTON
State Bar No. 24033077
chris.slayton@jonesflygare.com
JONES, FLYGARE, BROWN & WHARTON
A Professional Corporation
1600 Civic Center Plaza
P.O. Box 2426
Lubbock, Texas 79408-2426
Telephone:  (806) 765 8851
Telecopier:  (806) 765 8829

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on plaintiff by and through its counsel of record by United States Certified Mail, return receipt requested, with proper postage affixed, on this the 12th day of April, 2011, in accordance with the Federal Rules of Civil Procedure, as follows:

Via CMRRR #91 7108 2133 3938 1752 6720
Michael Hicks
M. Andrew Stewart
Mullins Hoard & Brown, LLP
P.O. Box 2585
Lubbock, Texas 79408-2585

_____
CHRISTOPHER B. SLAYTON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | | |
|---|---|---|
| **DIVLEND EQUIPMENT LEASING, L.L.C.** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | Civil Action No. _____ |
| | § | |
| **GEORGE ALCORN, DAVID BERRY,** | § | |
| **DAVID BRITT, ABDUL BURIDI,** | § | |
| **JEFFREY CAMPBELL, KEITH** | § | |
| **CARTER, ALEXANDER DIGENIS,** | § | |
| **THOMAS ECKERT, SATYA** | § | |
| **GARIMELLA, EUGENE GILES,** | § | |
| **SHAWN GLISSON, ELI HALLAL,** | § | |
| **JOHN HATEGAN, AMY HALLAL** | § | |
| **HENDERSON, SAMER HUSSEIN,** | § | |
| **ROBERT KARMAN, LESLIE** | § | |
| **STROUSE MATTINGLY, JOHN** | § | |
| **MCCONNELL, JULIO MELO,** | § | |
| **CHARLES OATES, BRIAN** | § | |
| **PARADOWSKI, RUKHSANA** | § | |
| **RAHMAN, DENIS RALEIGH, SYED** | § | |
| **RAZA, LAWRENCE ROUBEN, JOHN** | § | |
| **RUMISEK, ANIL SHARMA, CHRIS** | § | |
| **STAVENS, MIO STIKOVAC, BRIAN** | § | |
| **THORNTON, KMC REAL ESTATE** | § | |
| **INVESTORS, LLC, KENTUCKIANA** | § | |
| **INVESTORS, LLC AND** | § | |
| **CARDIOVASCULAR HOSPITALS OF** | § | |
| **AMERICA, LLC** | § | |
| *Defendant*s | § | |

## INDEX OF STATE COURT DOCUMENTS

| Tab | Date | Document |
|---|---|---|
| 1 | | Civil Docket Sheet |
| 2 | 3/8/11 | Plaintiff's Original Petition |
| 3 | 3/8/11 | Case Information Sheet |
| 4 | 3/8/11 | Requests for Service of Process |

| 5 | 3/8/11 | Citations |
| 6 | 3/21/11 | Affidavit of Service for Kentuckiana Investors, LLC |
| 7 | 3/21/11 | Affidavit of Service for KMC Real Estate Investors, LLC |
| 8 | 3/28/11 | Affidavit of Service for Cardiovascular Hospitals of America, LLC |
| 9 | 4/04/11 | Rule 11 Agreement |

Respectfully submitted,

_____

JAMES L. WHARTON
State Bar No. 21243500
larry.wharton@jonesflygare.com
CHRISTOPHER B. SLAYTON
State Bar No. 24033077
chris.slayton@jonesflygare.com
JONES, FLYGARE, BROWN & WHARTON
A Professional Corporation
1600 Civic Center Plaza
P.O. Box 2426
Lubbock, Texas 79408-2426
Telephone:  (806) 765 8851
Telecopier:  (806) 765 8829

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on plaintiff by and through its counsel of record by United States Certified Mail, return receipt requested, with proper postage affixed, on this the 12th day of April, 2011, in accordance with the Federal Rules of Civil Procedure, as follows:

Via CMRRR #91 7108 2133 3938 1752 6720
Michael Hicks
M. Andrew Stewart
Mullins Hoard & Brown, LLP
P.O. Box 2585
Lubbock, Texas 79408-2585

CHRISTOPHER B. SLAYTON



# CIVIL DOCKET

Date Case Filed: March 9, 2011          237TH DISTRICT COURT          Case No. 2011-556,271

| NAME OF PARTIES | ATTORNEYS | Kind of Action |
|---|---|---|
| DIVLEND EQUIPMENT LEASING, L.L.C | Attorney for Plaintiff | OTHER CIVIL |
| VS | MICHAEL HICKS | |
| GEORGE ALCORN, DAVID BERRY | * * * * * | Date Jury Fee Paid: |
| DAVID BRITT, ABDUL BURIDI | Attorney for Defendant | By Plaintiff |
| JEFFERY CAMPBELL, ET AL. | | By Defendant |

## DATE OF ORDERS

| MONTH | DAY | YEAR | ORDERS OF COURT | MINUTES | |
|---|---|---|---|---|---|
| | | | | VOLUME | PAGE |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

I, Barbara Sucsy, District Clerk, in and for Lubbock County, Texas, do hereby certify this to be a true and correct copy of a like instrument now on file in this office.

This ___ day of ____ 200__ ___ BSC

Clerk of District Court, Lubbock County, Texas pg ___ of ___

_____ Deputy

2

CAUSE NO. 2011-**556,271**

| | | |
|---|---|---|
| DIVLEND EQUIPMENT LEASING, L.L.C. | § § § | IN THE **237** DISTRICT COURT |
| V. | § § | |
| GEORGE ALCORN, DAVID BERRY, DAVID BRITT, ABDUL BURIDI, JEFFREY CAMPBELL, KEITH CARTER, ALEXANDER DIGENIS, THOMAS ECKERT, SATYA GARIMELLA, EUGENE GILES, SHAWN GLISSON, ELI HALLAL, JOHN HATEGAN, AMY HALLAL HENDERSON, SAMER HUSSEIN, ROBERT KARMAN, LESLIE STROUSE MATTINGLY, JOHN MCCONNELL, JULIO MELO, CHARLES OATES, BRIAN PARADOWSKI, RUKHSANA RAHMAN, DENIS RALEIGH, SYED RAZA, LAWRENCE ROUBEN, JOHN RUMISEK, ANIL SHARMA, CHRIS STAVENS, MIO STIKOVAC, BRIAN THORNTON, KMC REAL ESTATE INVESTORS, LLC, KENTUCKIANA INVESTORS, LLC AND CARDIOVASCULAR HOSPITALS OF AMERICA, LLC | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | OF


LUBBOCK COUNTY, TEXAS |

FILED FOR RECORD
DISTRICT CLERK LUBBOCK CO.
BY _____ DEPUTY
2011 MAR -8 PM 5: 11

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

DivLend Equipment Leasing, L.L.C., ("DivLend") a Texas limited liability company, Plaintiff, complains of George Alcorn, David Berry, David Britt, Abdul Buridi, Jeffrey Campbell, Keith Carter, Alexander Digenis, Thomas Eckert, Satya Garimella, Eugene Giles, Shawn Glisson, Eli Hallal, John Hategan, Amy Hallal Henderson, Samer Hussein, Robert Karman, Leslie Strouse Mattingly, John McConnell, Julio Melo, Charles Oates, Brian



01900158621001
PETN - PETITION FILED
Case No: 2011-556,271



Paradowski, Rukhsana Rahman, Denis Raleigh, Syed Raza, Lawrence Rouben, John Rumisek, Anil Sharma, Chris Stavens, Mio Stikovac, Brian Thornton, KMC Real Estate Investors, LLC, Kentuckiana Investors, LLC and Cardiovascular Hospitals of America, LLC, Defendants, and for cause of action shows:

## I.
## DISCOVERY LEVEL

1.      Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE.

## II.
## PARTIES

2.      Plaintiff DivLend Equipment Leasing, L.L.C., a Texas limited liability company, has its principal place of business at 6625 West 19th Street, Suite 114, Lubbock, Lubbock County, Texas.

3.      Defendant George Alcorn is an individual who resides in Indiana. Defendant may be served with process by personal service at 730 Main Street, Madison, Indiana 47250, or wherever he may be found.

4.      Defendant David Berry is an individual who resides in Indiana. Defendant may be served with process by personal service at 6001 Opossum Trot Rd., Charlestown, Indiana 47111, or wherever he may be found.

5.      Defendant David Britt is an individual who resides in Kentucky. Defendant may be served with process by personal service at 4533 Southern Pkwy, Louisville, Kentucky 40214, or wherever he may be found.



6.      Defendant Abdul Buridi is an individual who resides in Kentucky. Defendant may be served with process by personal service at 9815 White Blossom Blvd., Louisville, Kentucky 40241, or wherever he may be found.

7.      Defendant Jeffrey Campbell is an individual who resides in Kentucky. Defendant may be served with process by personal service at 1902 Arnold Palmer Blvd., Louisville, Kentucky 40245, or wherever he may be found.

8.      Defendant Keith Carter is an individual who resides in Kentucky. Defendant may be served with process by personal service at 6901 Windom Parkway, Prospect, Kentucky 40059, or wherever he may be found.

9.      Defendant Alexander Digenis is an individual who resides in Kentucky. Defendant may be served with process by personal service at 4100 Buttonbush Meadow Court, Louisville, Kentucky 40241, or wherever he may be found.

10.     Defendant Thomas Eckert is an individual who resides in Indiana. Defendant may be served with process by personal service at 732 West Main Street, Madison, Indiana 47250, or wherever he may be found.

11.     Defendant Satya Garimella is an individual who resides in Kentucky. Defendant may be served with process by personal service at 4105 Woodstone Way, Louisville, Kentucky 40241, or wherever he may be found.

12.     Defendant Eugene Giles is an individual who resides in Kentucky. Defendant may be served with process by personal service at 8400 Spruce Hill Rd., Prospect, Kentucky 40059, or wherever he may be found.



13.   Defendant Shawn Glisson is an individual who resides in Kentucky. Defendant may be served with process by personal service at 805 Oxmoor Woods Parkway, Louisville, Kentucky 40222, or wherever he may be found.

14.   Defendant Eli Hallal is an individual who resides in Indiana. Defendant may be served with process by personal service at 1964 State St., New Albany, Indiana 47150, or wherever he may be found.

15.   Defendant John Hategan is an individual who resides in Indiana. Defendant may be served with process by personal service at 309 W. Wendy Lane, Salem, Indiana 47167, or wherever he may be found.

16.   Defendant Amy Hallal Henderson is an individual who resides in Indiana. Defendant may be served with process by personal service at 1210 Knob Ave., New Albany Indiana 47150, or wherever she may be found.

17.   Defendant Samer Hussein is an individual who resides in Kentucky. Defendant may be served with process by personal service at 1807 Glen Eagles Way, Lagrange, Kentucky 40031, or wherever he may be found.

18.   Defendant Robert Karman is an individual who resides in Kentucky. Defendant may be served with process by personal service at 513 Club Lane, Louisville, Kentucky 40207, or wherever he may be found.

19.   Defendant Leslie Strouse Mattingly is an individual who resides in Indiana. Defendant may be served with process by personal service at 2047 S. State Rd. 135, Salem, Indiana 47167, or wherever she may be found.



20.    Defendant John McConnell is an individual who resides in Kentucky. Defendant may be served with process by personal service at 1 Woodhill Road, Louisville, Kentucky 40207, or wherever he may be found.

21.    Defendant Julio Melo is an individual who resides in Kentucky. Defendant may be served with process by personal service at 8516 Cheffield Drive, Lyndon, Kentucky 40222, or wherever he may be found.

22.    Defendant Charles Oates is an individual who resides in Kentucky. Defendant may be served with process by personal service at 220 Choctaw Road, Louisville, Kentucky 40207, or wherever he may be found.

23.    Defendant Brian Paradowski is an individual who resides in Indiana. Defendant may be served with process by personal service at 3001 Old Tay Bridge, Jeffersonville, Indiana 47130, or wherever he may be found.

24.    Defendant Rukhsana Rahman is an individual who resides in Indiana. Defendant may be served with process by personal service at 2408 Burning Tree CT, Jeffersonville, Indiana 47130, or wherever he may be found.

25.    Defendant Denis Raleigh is an individual who resides in Kentucky. Defendant may be served with process by personal service at 3711 Norbourne Blvd., Louisville, Kentucky 40207, or wherever he may be found.

26.    Defendant Syed Raza is an individual who resides in Kentucky. Defendant may be served with process by personal service at 425 S. Hubbard Ln. Apt. 262, Louisville, Kentucky 40207, or wherever he may be found.



27. Defendant Lawrence Rouben is an individual who resides in Kentucky. Defendant may be served with process by personal service at 5819 Orion Road, Louisville, Kentucky 40222, or wherever he may be found.

28. Defendant John Rumisek is an individual who resides in Kentucky. Defendant may be served with process by personal service at 515 Brandon Road, Louisville, Kentucky 40207, or wherever he may be found.

29. Defendant Anil Sharma is an individual who resides in Kentucky. Defendant may be served with process by personal service at 7610 Beech Spring Place, Louisville, Kentucky 40241, or wherever he may be found.

30. Defendant Chris Stavens is an individual who resides in Kentucky. Defendant may be served with process by personal service at 12355 Forest School Lane, Anchorage, Kentucky 40223, or wherever he may be found.

31. Defendant Mio Stikovac is an individual who resides in Kentucky. Defendant may be served with process by personal service at 7211 Doe Crest Court, Prospect, Kentucky 40059, or wherever he may be found.

32. Defendant Brian Thornton is an individual who resides in Kentucky. Defendant may be served with process by personal service at 640 South 2nd St., Apt. 3, Louisville, Kentucky 40202, or wherever he may be found.

33. Defendant KMC Real Estate Investors, LLC is an Indiana limited liability company. Defendant may be served with process by personal service by and through its Registered Agent, CT Corporation System, 251 East Ohio Street, Ste. 1100, Indianapolis, Indiana 46204; or by and through its manager Eli Hallal at 1964 State St., New Albany, Indiana



47150, or wherever he may be found; or by and through its manager Chris Stavens at 12355 Forest School Lane, Anchorage, Kentucky 40223, or wherever he may be found.

34. Defendant Kentuckiana Investors, LLC is an Indiana limited liability company. Defendant may be served with process by personal service by and through its Registered Agent, CT Corporation System, 251 East Ohio Street, Ste. 1100, Indianapolis, Indiana 46204; or by and through its manager and president Chris Stavens at 12355 Forest School Lane, Anchorage, Kentucky 40223, or 250 East Liberty Street, Ste. 1001, Louisville, Kentucky 40202, or wherever he may be found.

35. Defendant Cardiovascular Hospitals of America, LLC is an Indiana limited liability company. Defendant may be served with process by personal service by and through its Registered Agent, Corporate Creations Network, Inc., 105 E. Jefferson Blvd., Ste. 800, South Bend, Indiana 46601.

### III.

#### JURISDICTION AND VENUE

36. This Court has jurisdiction over the Defendants because the Defendants executed written guaranty agreements wherein each agreed that the performance of said guaranty agreements would occur in Texas. By executing guaranty agreements to be performed in Texas with Plaintiff, a resident of Texas, the defendants contracted by mail or otherwise with a Texas resident with performance due in this state. *See* Tex. Civ. Prac. & Rem. Code § 17.042(a). Additionally, the guaranty agreements executed by Defendants provide that such agreements shall be governed and construed in accordance with the laws of Texas. This Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.

37.     Venue is proper in Lubbock County, Texas, because all or a substantial part of the events or omissions giving rise to the claim occurred in Lubbock County, Texas, including without limitation the negotiation, required performance, and breach of the leases and guarantees that are the subject of this suit.  TEX. CIV. PRAC. & REM. CODE §15.002(a)(1).   Further, by executing the valid enforceable guaranty agreements the Defendants agreed that they would perform their obligations in Lubbock County, Texas and agreed to venue in Lubbock County, Texas.   *See* Tex. Civ. Prac. & Rem. Code §§ 15.020(b); 15.035(a).   Venue is therefore mandatory in Lubbock County, Texas.  Tex. Civ. Prac. & Rem. Code § 15.020(b).

## IV.
### SUIT ON GUARANTEES

38.     Plaintiff, as lessor of certain medical and hospital equipment (the "Equipment"), and Kentuckiana, as lessee, entered into that certain Equipment Lease Agreement on April 7, 2009 (the "Lease").  A true and correct copy of the Lease is attached hereto as Exhibit "A" and is incorporated herein by reference.  Plaintiff is the owner and holder of the right to payment under the Lease.

39.     Under the Lease Kentuckiana agreed to pay Plaintiff a security deposit of $707,039.46, a first payment of $60,891.81 and the last payment of $86,343.23, due upon signing of the Lease.   In addition, Kentuckiana agreed to make monthly rent payments as follows: $106,645.12 due June 15, 2009, $106,645.12 due July 15, 2009, and fifty-seven (57) monthly rent payments of $86,343.23 each beginning on August 15, 2009, and continuing monthly thereafter for the 60 month term of the Lease.

40.     On April 30, 2010, Plaintiff and Kentuckiana entered into that certain Lease Purchase Addendum (the "Lease Addendum") for the purpose of modifying the amount of the monthly rent payments due under the Lease.  A true and correct copy of the Lease Addendum is

attached hereto as Exhibit "B" and is incorporated herein by reference.  Pursuant to the Lease Addendum, Kentuckiana and Plaintiff modified the monthly rent payments as follows: $30,000.00 due at the signing of the Lease Addendum, three (3) monthly payments of $30,000.00 beginning May 15, 2010 and continuing monthly through July 15, 2010, and forty-nine (49) monthly payments of $86,343.23 beginning August 15, 2010 and continuing monthly thereafter for the remainder of the original term of the Lease.  These payment terms replaced the original rent payment terms from the Lease.

    41.   Kentuckiana has defaulted under the Lease due to its failure to make the scheduled payments that were due.  Pursuant to the terms of the Lease, all rents for the remaining term are due and payable.

    42.   To induce Plaintiff to purchase the Equipment and execute the Lease with Kentuckiana, Defendants executed joint and several guaranty agreements in favor of Plaintiff. Under the terms of the guaranty agreements, Defendants are jointly and severally indebted to Plaintiff for Kentuckiana's debt described in this petition.  Copies of Defendants' guaranty agreements for the Lease are collectively attached to this petition as Exhibit "C" and incorporated herein by reference for all purposes.

    43.   As of December 15, 2010, there was due and owing under the Lease and guaranty agreements the sum of $4,196,290.98, for which sum Plaintiff now sues.

## V.
### ATTORNEY'S FEES

    44.   Plaintiff has been required to retain MULLIN HOARD & BROWN, L.L.P. to initiate and prosecute this action.  By written agreement the Defendants agreed to pay Plaintiff's reasonable attorney's fees incurred in enforcing the guarantees. Plaintiff is entitled to have and

recover reasonable and necessary attorney's fees and expenses for all legal services rendered in bringing this action and prosecuting it in this Court.

# VI.
## CONDITIONS PRECEDENT

45.  All conditions precedent have been performed or have occurred.

WHEREFORE, PREMISES CONSIDERED, Plaintiff DivLend Equipment Leasing, L.L.C. prays that Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have and recover judgment against Defendants for the damages described above; for pre- and post-judgment interest as allowed under the terms of the lease and guarantees; for reasonable and necessary attorney's fees and expenses; and for such other relief, general or special, to which Plaintiff may show itself justly entitled at law or in equity, together with all costs of court.

Respectfully Submitted,

MULLIN HOARD & BROWN, LLP
P. O. Box 2585
Lubbock, Texas 79408-2585
Phone: (806) 765-7491
Fax:    (806) 765-0553

By:  _____
     Michael Hicks, SBN: 00793950
     M. Andrew Stewart, SBN: 24037554
     *Attorneys for Plaintiff*



# Lease Agreement

# Presented by

# DivLend Equipment Leasing, L.L.C.

# to

# Kentuckiana Medical Center, LLC



Initials: BS / Cl

# EQUIPMENT LEASE AGREEMENT

DivLend Equipment Leasing, L.L.C., a Texas corporation, 6625 West 19th Street, Suite 114, Lubbock, Texas 79407 ("Lessor"), and Kentuckiana Medical Center, LLC, a(n) Indiana Limited Liability Company, 4601 Medical Plaza Way, Clarksville, IN 47129- ("Lessee"), agree:

1.  **The Lease.** 2009055

A.  **Lease Transaction.** Lessor leases to Lessee the personal property listed on the attached Equipment Schedule(s) ("Equipment").

B.  **Lease.** Lessor has acquired or will acquire Lessor's interest in Equipment in order to enter into this Equipment Lease ("Lease"). Lessee has provided to Lessor order information on Equipment by telephonic or facsimile transmission advice or by executing a lease order, an assignment of purchase order or a bill of sale ("Order Information"). As to any Equipment added to this Lease by one or more additional Equipment Schedules after the date of this Lease, this Lease will become effective only upon Lessee's examination and approval of the contract(s) evidencing Lessor's purchase of Lessor's interest in the added Equipment.

2.  **Equipment.**

A.  **Equipment Covered; Amendments to the Equipment Schedule.** The Equipment Schedule may consist of more than one document, so long as each document is identified to this Lease by the Lease date shown and is signed by Lessor and Lessee. Lessor and Lessee may, by agreement indicated by their signatures on the Equipment Schedule, amend or supplement the Equipment Schedule from time to time to add or delete items of Equipment or change the description of Equipment or other terms shown on the Equipment Schedule. The Acceptance Certificate referred to in Section 4 of this Lease may operate as an amendment to the Equipment Schedule. This Lease applies to Equipment listed on the Equipment Schedule as amended or supplemented from time to time.

B.  **Replacements and Additions to Equipment.** Any replacement parts, additions or repairs to any item of Equipment will become part of that Equipment whether or not reflected in an amendment or supplement to the Equipment Schedule.

C.  **Spare Parts and Supplies.** Unless listed on the Equipment Schedule, Equipment will not include spare parts (unless used as replacement parts in Equipment), supplies, material, tools or other ancillary equipment used in operation of Equipment.

3.  **Delivery and Installation of Equipment.**

A.  **Location.** Lessee will keep, or store when not in use, each piece of Equipment at the location shown on the Equipment Schedule. Lessee will not remove Equipment from that location without Lessor's written approval, unless Equipment is of a sort designed and intended for use at various sites ("Mobile Equipment"). Lessee will not store Mobile Equipment when not in use at any other location without Lessor's written approval.

B.  **Delivery and Installation.** Lessor will instruct the vendor of Equipment ("Vendor") to deliver Equipment as shown on the Order Information. Lessee will be responsible for placement of Equipment in Lessee's operating site and for all installation procedures, except to the extent that Vendor undertakes such responsibility.

C.  **Risk of Loss.** As between Lessor and Lessee, regardless of Lessee's subsequent acceptance or rejection of Equipment, risk of loss of Equipment passes to Lessee:

(i)  if Equipment is to be delivered by a carrier, at the time the carrier tenders Equipment for delivery at the delivery location shown in the Equipment Schedule; or

(ii)  if Equipment is held by a bailee or other person to be delivered without being moved, at the time such other person acknowledges Lessee's right to possession of Equipment.

4.  **Inspection; Rejection.** LESSEE WILL INSPECT AND TEST EACH ITEM OF EQUIPMENT PRIOR TO EXECUTING THE "ACCEPTANCE CERTIFICATE."

5.  **Rent and Other Payments.**

A.  **Rent; Pro Rata Rent.** Upon acceptance of Equipment, Lessee's obligation to pay rent becomes irrevocable and unconditional. Lessee will pay rent for each item of Equipment in the amounts and on the dates specified for the applicable basic or optional renewal term for each item on the Equipment Schedule.

B.  **Security Deposit.** If required by Lessor, Lessee will pay the Security Deposit specified in the Equipment Schedule at the time Lessee and Lessor sign the Acceptance Certificate. Lessor will hold the Security Deposit. Lessor may, but is not obligated to, apply the Security Deposit to cure any default of Lessee under this Lease, in which event Lessee shall promptly restore the Security Deposit to its original amount. Upon termination of this Lease, if Lessee has fulfilled all the terms and conditions of this Lease, Lessor will return to Lessee any remaining balance of the Security Deposit.

C.  **Delivery, Installation and Similar Expenses.** Lessee will pay to any provider on the terms of the provider's invoice,



Initials: BJ CA

whether such invoice is directed to Lessee, Lessor or Vendor, all costs associated with packing, shipping, delivering, installing, testing, servicing and operating Equipment. Lessor will promptly forward to Lessee for payment any such invoice Lessor may receive. At Lessor's option, Lessor may pay such invoices and include the amount of the payments in the amounts financed by Lessor in connection with this Lease.

D.   **Taxes and Fees.** Lessee will timely pay, or reimburse to Lessor if Lessor pays, all gross receipts, sales, use, compensating, property or other taxes and all license, permit, UCC filing or registration fees or other administrative charges, with respect to the purchase, leasing or use of Equipment, when due.

E.   **Late Fees.** If any rent or other amount payable under this Lease is not paid when due, Lessee shall pay as an administrative and late charge an amount equal to five percent (5%) of the amount of such overdue payment, plus interest on such delinquent payment of one and one half percent (1½%) per month or the maximum amount permitted by law, whichever is lower.

F.   **Application of Payments.** Lessor may apply any payment received from Lessee at any time against any obligation due and owing by Lessee under this Lease in Lessor's sole discretion, notwithstanding any statement appearing on or referred to in any remittance from Lessee or any prior application of such payment. In the event any bankruptcy proceedings are instituted by or against Lessee under the US Bankruptcy Code within 90 days after Lessor receives any such payment, such payment will be applicable to unpaid obligations then due under this Lease in the inverse order of maturity.

6.   **Term.**

A.   **Lease.** This Lease will be in effect from the date it is first signed by the last party to sign until Lessee has paid all amounts and performed all other obligations due under this Lease, including all amendments and supplements to the Equipment Schedule.

B.   **Rental Periods.** Lessee will rent each item of Equipment for the period shown on the Equipment Schedule.

C.   **Holdover Periods.** If Lessee fails to return Equipment to Lessor as provided below, then for the period after Equipment was due to be returned until Lessor takes actual possession ("Holdover Period"), Lessee will pay rent at the same rate which Lessee paid during the rental term shown on the Equipment Schedule. Payment of rent for a Holdover Period will not affect Lessor's right to recover Equipment under the terms of this Lease.

7.   **Return of Equipment.**

A.   **Return.** At the end of the term shown on the Equipment Schedule, or on the earlier termination of this Lease as to any item of Equipment, Lessee will return to Lessor each item of Equipment as to which the term has expired or this Lease has terminated.

B.   **Delivery.** In order to return Equipment, Lessee will, at Lessee's expense, deliver Equipment properly prepared or packed for shipping in the manner by which Vendor originally delivered or caused delivery of Equipment, to the place which Lessor specifies.

C.   **Condition.** Lessee will return all Equipment in good operating condition, subject to ordinary wear and tear from Lessee's use of Equipment in accordance with this Lease.

8.   **Lessee's Obligations, Acknowledgments and Representations.** In addition to performing all other obligations set forth in this Lease, Lessee will have the following obligations and makes the following acknowledgments and representations:

A.   **Title.** Lessee acknowledges that Lessor retains title to all Equipment, and Lessee will take no action which interferes with Lessor's title.

B.   **Labeling.** At Lessor's request, Lessee will stencil or otherwise permanently label Equipment with Lessor's name and a statement of Lessor's Ownership. Lessee will not remove or obscure any such label which Lessor, Vendor or Lessee applies.

C.   **Maintenance and Alterations.** Lessee will, at Lessee's expense, maintain Equipment in good operating condition in accordance with the manufacturer's instructions, using parts and service personnel which the manufacturer provides or authorizes. If the manufacturer does not provide or authorize service personnel for an item of Equipment, Lessee will allow only competent, trained service personnel to service that Equipment. Other than maintenance required under this subsection, Lessee will not make or remove any alterations, additions or improvements to Equipment without Lessor's prior written approval.

D.   **Use.**

(i)   Lessee will use equipment for business or commercial purposes only (and not for personal, family or household use).

(ii)   Lessee will use the Equipment in accordance with the manufacturers' instructions and for the purposes which the manufacturers intend.

(iii)   Lessee will allow only qualified personnel to operate Equipment.

(iv)   Lessee will use Equipment only for lawful purposes and will operate Equipment in accordance with all governmental

Initials: BI | a

regulations, after obtaining required permits, and in accordance with insurers' requirements and all requirements set forth in Schedule A hereto.

E. **Insurance.**

(i) Lessee shall keep the Equipment insured against all risks of loss or damage from every cause whatsoever, in amounts determined by Lessor and with an insurer acceptable to the Lessor. Lessor shall be named on the policy as "Owner /Lessor". The amount of such insurance shall be sufficient so that neither the Lessor nor Lessee will be considered a co-insurer. All such insurance shall contain Lessor's Interest Endorsement ("Breach of Warranty") provision. Lessee also shall carry public liability insurance, personal injury and property damage, covering the Equipment with limits determined by the Lessor.

(ii) All such insurance shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall include Lessor as "Named Insured". Lessee shall pay the premiums for such insurance and deliver to Lessor satisfactory evidence of the insurance coverage required hereunder. All such insurance shall provide for not less than thirty (30) days notice of cancellation to Lessor.

(iii) The proceeds of such insurance payable as a result of loss or damage to any item of the Equipment shall be applied to satisfy Lessee's obligations as set forth in Paragraph 5 above, and Paragraph 9 below. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy.

(iv) Lessee will not cancel or allow insurance policies required in this section to lapse without Lessor's written approval.

F. **Indemnification.** Lessee will indemnify Lessor against all loss, cost or damages, including attorney's fees, resulting from the installation and use of Equipment, including loss, costs or damages arising from trademark, patent and copyright infringement.

G. **Tax Liens.** Lessee will maintain Equipment free from any lien taxes.

H. **Mechanics' and Materialmen's Liens.** Lessee will maintain Equipment free from any mechanics' or materialmen's liens.

I. **Damage or Loss.** Lessee is responsible for all damage to or loss of Equipment and will promptly repair or replace any Equipment damaged, destroyed, lost or stolen. Loss of use of Equipment due to damage, destruction, loss or theft will not mitigate Lessee's obligation to pay rent or other amounts due under this Lease.

J. **Responsibility for Fitness and Function.** Lessee bears full responsibility for the evaluation, selection, and operation of Equipment. Accordingly, Lessee acknowledges that:

(i) THE LESSEE REPRESENTS THAT LESSEE HAS SELECTED THE EQUIPMENT LEASED HEREUNDER PRIOR TO HAVING REQUESTED THE LESSOR TO PURCHASE THE SAME FOR LEASING TO THE LESSEE, AND LESSEE AGREES THAT THE LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY, AND AS BETWEEN LESSEE AND LESSOR'S ASSIGNEE, LESSEE LEASES THE EQUIPMENT "AS IS", LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY EQUIPMENT LEASED HEREUNDER OR THE USE OR MAINTENANCE THEREOF, OR THE FAILURE OF OPERATION THEREOF, OR THE REPAIRS, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF, OR BY ANY INTERRUPTION OF SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE VENDOR SHALL BE BINDING ON THE LESSOR NOR SHALL THE BREACH OF SUCH RELIEVE LESSEE OF, OR IN ANY WAY AFFECT, ANY OF LESSEE'S OBLIGATIONS TO THE LESSOR AS SET FORTH HEREIN, LESSOR DISCLAIMS AND SHALL NOT BE RESPONSIBLE FOR ANY LOSS, DAMAGE OR INJURY TO PERSONS OR PROPERTY CAUSED BY THE EQUIPMENT WHETHER ARISING THROUGH THE NEGLIGENCE OF THE LESSOR OR IMPOSED BY LAW. **IMPORTANT:** Vendor and its representatives are not the agents of Lessor. Neither Vendor nor its representatives can waive, vary or alter any of the Terms and Conditions. Lessor does not warrant merchantability or fitness for any particular use of equipment and disclaims any other warranty, express, implied or statutory. Lease payments will be due despite dissatisfaction with Equipment for any reason.

(ii) Lessor is not the manufacturer or supplier of Equipment, nor the agent of the manufacturer or supplier. Lessee has made the selection of Equipment and the manufacturer and Vendor based on Lessee's own judgment and not in reliance on any representations made by Lessor.

(iii) Lessor makes no warranty of the performance, capacity, quality, life, or any other characteristic or specification of Equipment or the conformity of Equipment to the provisions of any purchase order or Order Information relating to Equipment, or with respect to patent infringements.

(iv) Lessor makes no warranty as to shipment, delivery or installation of Equipment and Lessor's obligations for shipment, delivery and installation are specifically limited to those set forth in Section 3 of this Lease.

(v) Lessee will be responsible for making and pursuing any claims regarding Equipment against the manufacturer, Vendor,

**Equipment Lease Purchase Agreement**
Page 3



Initials: *BI* / *CA*

shipper, installer, servicer or any other party.  Lessee will, however, notify Lessor of any such complaint which Lessee files.  **Lessor is not responsible for any repairs or service to Equipment.**

(vi)  Lessor will not be liable to Lessee or any other party for any damages, direct, indirect or consequential, arising from the selection, delivery, installation, use or servicing of Equipment or from any defect in the design or manufacture of Equipment.

(vii)  Lessor assigns to Lessee, for as long as Lessee leases Equipment, except if Lessee is in default under this Lease, Lessor's warranty rights with respect to the Equipment.

**K.   Fixtures and Accessions.**

(i)  **Fixtures.**  Lessee will never affix Equipment to real property in which Lessee has no interest of record or which Lessee does not possess.  Lessee will not affix Equipment to real estate in which Lessee has an interest of record or which Lessee possesses without Lessor's written consent.  As a condition to Lessor's consent, Lessor may require Lessee to obtain from the Owner(s) or encumbrancer(s) of the real estate to which Lessee proposes to affix Equipment written consent to Lessor's prior interest in Equipment or a disclaimer of interest in Equipment.  Lessee will indemnify Lessor against any claims by persons having an interest in the real estate if Lessor enforces Lessor's rights under this Lease by removing or requiring removal of Equipment from the real estate.

(ii)  **Accessions.**  Lessee will not install Equipment in or affix Equipment to other personal property without Lessor's written consent.  If Lessee installs Equipment in or affixes Equipment to other personal property, Lessee will not, without Lessor's written consent, (a) sell or pledge all of or any interest in the whole; or (b) take subsequent advances from a creditor with a prior perfected security interest in the whole.  Lessee will indemnify Lessor against any claims by persons having an interest in the whole if Lessor enforces Lessor's right under this Lease by removing or requiring removal of Equipment from the whole.

**L.   Reimbursement of Lessor's Payments and Expenses.**  Lessor may pay on behalf of Lessee any payment to a third party, including insurance premiums, which Lessee is obligated under this Lease to pay and which Lessee fails to pay timely.  Lessor may perform on behalf of Lessee any action which Lessee is obligated to perform under this Lease and which Lessee fails to perform in a timely manner.  Lessee will reimburse Lessor immediately upon Lessor's request for any such amounts which Lessor pays, and for any reasonable expense which Lessor incurs in performing such action, and for Lessor's expenses of enforcing this Lease, including attorney fees and applicable taxes, together with interest at eighteen percent (18%) per year or the maximum amount permitted by law, whichever is lower, on such amounts and/or expenses from the date(s) Lessor pays such amounts or incurs such expenses to the date Lessee reimburses Lessor.

**M.   Documentation.**  Upon Lessor's request, Lessee will from time to time provide to Lessor financial statements showing Lessee's financial condition and operations, and will execute financing statements or other documents which Lessor requests to evidence Lessor's and/or Lessee's interest in Equipment.  Lessee hereby appoints Lessor as its attorney-in-fact to execute and file on behalf of Lessee and authorizes Lessor to file without Lessee's signature any UCC financing statements and amendments Lessor deems advisable to secure the interests of Lessor.  Lessee agrees to pay all documentation cost and filing fees associated with this lease.

**N.   Information True.**  All information about Lessee which Lessee has provided to Lessor in connection with this Lease is true as of the date provided or the date of the information if stated in the information.

**9.   Option to Purchase.**  If Lessee is not in default under this Lease, Lessee may purchase any item of Equipment for which a purchase option is described in a rider or supplement to this Lease.  Lessee may exercise a purchase option by notifying Lessor of Lessee's intent to do so no later than 60 days prior to the end of the Rental Period and by tendering to Lessor on or before the last day of the Rental Period cash, cashier's check or other immediately available funds for the amount of the specified purchase price of Equipment plus all other amounts, whether or not related to Equipment to be purchased, then due and payable under the Lease.  Upon purchase, Lessee's obligations under this Lease with respect to Equipment purchased will cease, except that Lessee's obligations to indemnify Lessor will survive the purchase.  Upon purchase, Lessor will transfer to Lessee title to Equipment purchased, free and clear of any liens or encumbrances created by Lessor.  If Lessee does not exercise the purchase option, if available, then the option will expire and if Lessee has not returned Equipment to Lessor as provided in this Lease, then Lessee will pay rent for the Holdover Period starting at the end of the Rental Period, as provided in this Lease, unless otherwise expressly provided in the Equipment Schedule or any other rider or supplement to this Lease.

**10.  Default of Lease.**

**A.   Events of Default.**  Lessee will be in default under this Lease if:

(i)  Lessee fails to pay rent when due;

(ii)  Lessee fails to perform any other obligation at the time required and does not perform the obligation within thirty (30) days after such failure to perform and Lessee receives notice from Lessor of the failure to perform;

(iii)  any representation of Lessee in this Lease is or becomes untrue;

(iv)  a proceeding for bankruptcy, reorganization, appointment of a receiver or trustee or other insolvency proceeding is initiated by or against Lessee;

(v)  Lessee wrongfully rejects delivery of any Equipment;



Initials: BI / CI

(vi)  Lessor deems itself insecure or the Equipment unsafe; or

(vii)  Lessee ceases to exist or ceases to engage in the business in which Lessee is engaged on the date of this Lease.

B.  **Lessor's Remedies.**  Upon the occurrence of an event of default as stated above, Lessor may exercise any one or more of the following remedies:

(i)  terminate Lessee's leasehold interest as to all Equipment, regardless of whether the default relates to any particular item(s) of Equipment;

(ii)  terminate Lessee's leasehold interest as to the item(s) of Equipment to which the default relates;

(iii)  cure the default on behalf of Lessee, in which case Lessee will reimburse Lessor as provided in Section 8.L of this Lease;

(iv)  declare any or all rents for the remaining term of this Lease immediately due and payable;

(v)  enter onto Lessee's premises, with 10 days notice to Lessee, with or without a court order, and remove and reclaim any Equipment;

(vi)  with 10 days notice to Lessee, sell or lease any wrongfully rejected or reclaimed Equipment at a public or private sale (at which Lessor may purchase Equipment) or leasing, apply proceeds of such sale or leasing to any amounts due from Lessee, and collect from Lessee any deficiency remaining after applying the proceeds;

(vii)  exercise any other legal rights Lessor may have under this Lease; or

(viii) bring an action in law or equity to enforce any of the foregoing remedies or any other rights Lessor may have under this Lease.

C.  **Waiver Not Continuing.**  Lessor's waiver of Lessor's right to pursue any remedy after Lessee's default will not obligate Lessor to continue to waive Lessor's right as to the same event of default, nor will the waiver obligate Lessor to waive Lessor's rights with respect to any other event of default.

**11.  Assignment and Subleasing.**

A.  **Lessor.**  Lessor may assign Lessor's interest in this Lease to any party.  Lessor will notify Lessee of such assignment. Lessee's obligations under this Lease will continue to run to Lessor's assignee, and Lessee will not assert against the assignee any defense or claim Lessee may have against Lessor.

B.  **Lessee.**  Without Lessor's written consent, LESSEE WILL NOT (i) ASSIGN ALL OR ANY PART OF LESSEE'S INTEREST IN THIS LEASE, (ii) ASSIGN ANY INTEREST IN ANY EQUIPMENT, OR (iii) SUBLEASE ANY EQUIPMENT.

**12. Additional Security; Cross-Collateralization.**  In order to more fully secure Lessee's obligations under this Lease, Lessee grants to Lessor a security interest in any Security Deposit and in any Equipment leased to Lessee under this Lease or any personal property that secures any indebtedness or other obligations of Lessee to Lessor now existing or hereafter created.

**13. Changes.**  Lessee hereby authorizes Lessor, without further notice, to complete the description of the Equipment to be leased, the Equipment serial numbers, the quantity thereof, and to fill in any blank spaces on this Lease, and to date this Lease.

**14.  Joint and Several Liability.**  In the event that there exists more than one Lessees, or Co-Lessees, as parties to this Lease, each will be jointly and severally liable under this Lease and each reference in this Lease to "the Lessee" will be a reference to each of them and the terms "Co-Lessees" and "Lessee" will be used interchangeably in this Lease and other related documents.

**15.  Miscellaneous.**

A.  **Entire Agreement.**  This Lease (and its related documents so long as each document is identified to this Lease by the Lease date shown and is signed by Lessor and Lessee or Co-Lessees) constitutes the entire agreement of the parties as to its subject matter.  Neither party makes any representations or warranties in connection with this Lease which are not stated in this Lease.

B.  **No Joint Venture Or Partnership.**  This Lease and the parties' performance under this Lease will not constitute a joint venture or partnership between the parties.

C.  **Amendments.**  This Lease may be amended only in writing signed by both parties.

D.  **Notice.**  Notice required under this Lease will be deemed given on the earlier of when actually received or three (3) days after the notice is deposited in the US mail, certified or registered, addressed to the appropriate party at the address first set forth above, or any other address of which the party to receive notice has notified the other in writing.

E.  **Severability.**  If a court of competent jurisdiction holds any provision of this Lease to be unenforceable, all other provisions of this Lease will remain valid, to the extent consistent with the court's holding.

F.  **Governing Law; Choice of Forum for Resolution for Disputes and Waiver of Jury Trial.**

Initials: _BI CI_

(i)   AS USED IN THIS PARAGRAPH 15 F (I), "APPLICABLE JURISDICTION" MEANS THE STATE, AS THE SAME MAY CHANGE FROM TIME TO TIME, WHERE THE HOLDER OF THE LESSOR'S INTEREST IN THIS LEASE MAINTAINS ITS PRINCIPAL OFFICE RESPONSIBLE FOR ADMINISTERING THIS LEASE.  THIS LEASE AND ANY GUARANTY HEREOF SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE' APPLICABLE JURISDICTION APPLICABLE TO LEASE AND GUARANTY AGREEMENTS, RESPECTIVELY, MADE AND TO BE FULLY PERFORMED IN THE APPLICABLE JURISDICTION.

(ii)   AS USED IN THIS PARAGRAPH 15 F (II), "APPLICABLE JURISDICTION" MEANS THE COUNTY WITHIN THE STATE, AS THE SAME MAY CHANGE FROM TIME TO TIME, WHERE THE HOLDER OF THE LESSOR'S INTEREST IN THIS LEASE MAINTAINS ITS PRINCIPAL OFFICE RESPONSIBLE FOR ADMINISTERING THIS LEASE.  ALL ACTIONS, PROCEEDINGS OR LITIGATION BROUGHT BY LESSOR OR LESSEE OR ANY GUARANTOR(S) SHALL BE INSTITUTED AND PROSECUTED IN THE APPLICABLE JURISDICTION.  THE PARTIES ACKNOWLEDGE THEIR AGREEMENT THAT THE STATE COURTS SITTING IN THE APPLICABLE JURISDICTION SHALL BE THE <u>EXCLUSIVE</u> FORUM FOR ALL ACTIONS, PROCEEDINGS OR LITIGATION BETWEEN OR AMONG THE PARTIES, NOTWITHSTANDING THAT OTHER COURTS MAY HAVE JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER.

(iii)  LESSEE, ANY GUARANTOR(S) AND/OR ANY PLEDGOR(S) WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY IN ANY ACTION, PROCEEDING OR LITIGATION BETWEEN OR AMONG LESSOR, LESSEE OR ANY GUARANTOR(S).

G.   **Binding Effects.**  This Lease benefits and binds Lessor and Lessee and their successors, assigns, heirs and personal representatives.

H.   **No Third Party Beneficiary.**  This Lease does not benefit or bind, and may not be enforced by, Vendor or any person other than Lessor and Lessee and the successors, assigns, heirs, and personal representatives of Lessor and Lessee.

I.    **Agreement to Provide Financial Statements.**  Lessee agrees to provide financial statements annually, or quarterly, as may reasonably be requested by Lessor throughout the term of the Lease.

IN WITNESS WHEREOF, the parties have executed this Agreement as of 4/7/2009.

<table>
<tr><td align="center">**LESSEE**</td><td align="center">**LESSOR**</td></tr>
<tr><td align="center">Kentuckiana Medical Center, LLC</td><td align="center">Dividend Equipment Leasing, L.L.C.</td></tr>
<tr><td align="center">4601 Medical Plaza Way</td><td align="center">6625 West 19th Street, Suite 114</td></tr>
<tr><td align="center">Clarksville, IN  47129-</td><td align="center">Lubbock, Texas 79407</td></tr>
</table>

By: Dr. Badr Idbeis                                            By: Jeff Ugh
Title: Manager                                                 Title: Vice President

4·14·09.                                                       4/21/09
Date                                                           Date

Witness           Derrick Idbeis



Initials: _BI_ | _C
_

_____

By: Chris Stevens
Title: Manager

_____ APRIL 8, 2009 _____
Date

_____ PAUL E NEWSOM _____
Witness

_____
By: Cardiovascular Hospitals of America, L.L.C. - Member
Its: Manager – Badr Idbeis, M.D.

_____ 4. 14. 09 . _____
Date

_____
Witness     Dennick Idbeir

_____
By: Kentuckiana Investors, LLC – Member
Its: Manager & President – Chris S. Stevens, M.D.

_____ APRIL 8, 2009 _____
Date

_____ PAUL E NEWSOM _____
Witness

# EQUIPMENT SCHEDULE A

Under the Equipment Lease Agreement dated 4/7/2009:

**Description of Equipment**  See Exhibit A

**Operating Location (or storage site for mobile Equipment not in use):**  4601 Medical Plaza Way, Clarksville, IN  47129-

**Security Deposit**  $707,039.46.  THIS IS NOT A PERIODIC RENTAL PAYMENT; it is a Security Deposit for Equipment Lease number 2009055.  *Please see Schedule B.

**Schedule of Periodic Rental Payments**  The first payment of $60,891.81 and the last payment of $86,343.23, together totaling $147,235.04, are due at the signing of the lease followed by a payment of $106,645.12 on June 15, 2009, a payment of $106,645.12 on July 15, 2009, and fifty-seven (57) monthly payments of $86,343.23 beginning on August 15, 2009 and continuing monthly thereafter.

APPLICABLE SALES OR USE TAX WILL BE ADDED TO ALL PAYMENTS

**Basic Rental Period Term**  61 Months

**Payment Frequency**  Monthly

**Required Insurance**

**Liability Coverage**  $2,000,000.00

**Property Coverage**  $3,927,996.99

**Replacement Coverage**  $3,927,996.99



**LESSEE**
Kentuckiana Medical Center, LLC
4601 Medical Plaza Way
Clarksville, IN 47129-

By: Dr. Badr Idbeis
Title: Manager

Date   4.14.09

By: Chris Stavens
Title: Manager

Date   APRIL 08, 2009

By: Cardiovascular Hospitals of America, L.L.C. - Member
Its: Manager – Badr Idbeis, M.D.

Date   4.14.09

By: Kentuckiana Investors, LLC – Member
Its: Manager & President – Chris S. Stavens, M.D.

Date   April 08, 2009

**LESSOR**
DivLend Equipment Leasing, L.L.C.
6615 West 19th Street, Suite 114
Lubbock, Texas 79407

By: Jeff Horn
Title: Vice President

Date   4/21/09



# ACCEPTANCE CERTIFICATE

### DivLend Equipment Leasing, L.L.C.
### 6625 West 19th Street, Suite 114
### Lubbock, Texas 79407

Acceptance Certificate to Equipment Lease Agreement No. 2009055 dated 4/7/2009 (the "Lease").

1.    Lessee acknowledges that Equipment set forth on Schedule A hereto ("Equipment") is unconditionally accepted by Lessee for all purposes under the Lease and agrees to perform faithfully all of Lessee's obligations under the Lease with respect to Equipment as of the date hereof.  Lessee authorizes and directs Lessor to make payment to each Vendor of Equipment pursuant to such Vendor's invoice or any other purchase order, purchase agreement or supply contract with such Vendor, receipt and approval of which are hereby acknowledged.  This Certificate reaffirms all of Lessee's representation, obligations and acknowledgments as set forth in the Lease as of the date hereof and certifies that Lessee is not in default under the Lease.

2.    Lessee represents and warrants that (i) Equipment has been delivered and is in operation for which Equipment is intended, to the satisfaction of Lessee; and (ii) if requested by Lessor, Equipment has been marked or labeled evidencing Lessor's interest therein.

3.    Lessee agrees to pay Lessor rental payment as set forth in the Equipment Schedule, or under modified schedule, if indicated below.  All applicable taxes will be due in the manner set forth in the Equipment Schedule.

Agreed and Accepted:

| | |
|---|---|
| **LESSEE** | **LESSOR** |
| Kentuckiana Medical Center, LLC | DivLend Equipment Leasing, L.L.C. |
| 4601 Medical Plaza Way | 6625 West 19th Street, Suite 114 |
| Clarksville, IN  47129- | Lubbock, Texas 79407 |

By: Dr. Badr Idbeis
Title: Manager

Date: 4.14.09.

By: Chris Stavens
Title: Manager

Date: April 08, 2009

By: Cardiovascular Hospitals of America, L.L.C. - Member
Its:  Manager – Badr Idbeis, M.D.

Date: 4.14.09

By: Kentuckiana Investors, LLC - Member
Its:  Manager & President – Chris S. Stavens, M.D.

Date: April 08, 2009

By: Jeff Horn
Title: Vice President

Date: 4/17/09



# PURCHASE OPTION RIDER WITH AUTOMATIC RENEWAL

Purchase Option Rider to Lease # 2009055 dated 4/7/2009 (the "Lease") between the undersigned parties.

1.  So long as no Event of Default has occurred and is continuing under the Lease and upon not less than 90 days' prior written notice, Lessee shall have the right upon expiration of the Lease Term of the above-referenced Lease (the "Initial Term") to purchase all, but not less than all, of Lessor's right, title and interest in and to the equipment for a purchase price equal to the Fair Market Value of the Equipment (hereinafter defined) as of the end of the Initial Term plus any sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (all of the foregoing being collectively referred to herein as the "Purchase Price").

2.  The Fair Market Value of the Equipment shall be determined by the Lessor.

3.  If, for any reason whatsoever, the Lessee does not purchase the Equipment at the end of the Initial Term in accordance with this Rider, the Lessee may return the Equipment to the Lessor at Lessee's expense, in good operating condition less reasonable wear and tear, on or before the last day of the Lease Term.  Should the Lessee choose to return the Equipment it shall be responsible for a refurbishing, restocking, and remarketing fee of 10% of the acquisition cost of the equipment, plus any unpaid sales, use, property or excise taxes and any and all unpaid payments or late fees remaining due under the Lease.  Upon return of the Equipment under the aforementioned terms and conditions Lessee's obligations under the Lease shall be terminated.

4.  If the Lessee does not  (a) purchase the Equipment as provided in paragraph #1 above or  (b) return the Equipment as provided in the paragraph #3 above, then the Lease Term of the Equipment shall automatically and without further action on the part of the Lessor or Lessee be extended for an additional consecutive term of 12 months (the "Extended Term") at a monthly rental to be determined solely at the Lessor's discretion but not to exceed the amount of the monthly payment as evidenced in the Schedule of Payments of the Lease (the "Extended Term Rental") with the Extended Term Rental being due and payable on the first day on each month of the Extended Term. At the end of such Extended Term, the Lessee shall be obligated to return the Equipment to the Lessor in accordance with the terms of the Lease.

5.  All capitalized terms not defined herein shall have the meaning set forth in the Lease.



**LESSEE**
Kentuckiana Medical Center, LLC
4601 Medical Plaza Way
Clarksville, IN 47129-

By: Dr. Badr Idbeis
Title: Manager

Date                    4. 14. 09.

By: Chris Stavens
Title: Manager

Date        APRIL 08, 2009

By: Cardiovascular Hospitals of America, L.L.C. - Member
Its: Manager – Badr Idbeis, M.D.

Date        4 14. 09 .

By: Kentuckiana Investors, LLC - Member
Its: Manager & President – Chris S. Stavens, M.D.

Date        April 08, 2009

**LESSOR**
DivLend Equipment Leasing, L.L.C.
602A West 19th Street, Suite 114
Lubbock, Texas 79407

By: Jeff Hord
Title: Vice President

Date        4/21/09



# ATTACHMENT TO THE LEASE AGREEMENT
## DISCLAIMER OF OWNERSHIP

The Undersigned (the "Lessee") proposes to be the Lessee of certain equipment DivLend Equipment Leasing, L.L.C. (the "Lessor") pursuant to an Equipment Lease between Lessor and Lessee bearing Lease # 2009055 dated 4/7/2009. The equipment covered by the Lease is hereinafter referred to as the "Equipment".

The Equipment will be purchased by Lessor from Diversified Lenders, Inc. (the "Vendor"). Lessee has made a down payment, either in cash or other good and valuable consideration, to the Vendor as part of the original purchase order, and it is contemplated that, upon Lessor's receipt of all necessary documentation and satisfaction of all conditions to the Lessor entering into the Lease, Lessor shall pay the Vendor the remaining balance of the purchase price and receive a bill of sale from the Vendor covering a 100% interest in the Equipment.

The Lessee, being satisfied that its payments under the Lease are based only upon Lessor's payment to the Vendor and not Lessee's down payment, hereby consents to the Vendor transferring the entire Ownership to Lessor, and, effective on the actual transfer of the Equipment to Lessor, disclaims any Ownership interest or rights in the Equipment except those the Lessee has by virtue of being the Lessee under the Lease.

**LESSEE**
Kentuckiana Medical Center, LLC
4601 Medical Plaza Way
Clarksville, IN 47129-

By: Dr. Badr Idbeis
Title: Manager

Date: 4.14.09.

By: Chris Stavens
Title: Manager

Date: APRIL 08, 2009

By: Cardiovascular Hospitals of America, L.L.C. - Member
Its: Manager – Badr Idbeis, M.D.

Date: 4.14.09.

By: Kentuckiana Investors, LLC - Member
Its: Manager & President – Chris S. Stavens, M.D.

Date: APRIL 08, 2009



# DISCLAIMER OF ORAL AGREEMENTS

The Lessor and Lessee, hereinafter the Parties, have entered into a transaction generally described as Lease between Lessor and Lessee dated 4/7/2009. In conjunction with this transaction the Parties have executed lease agreements and other related documents. It is the intention of the Parties that this Disclaimer be incorporated by reference into each of the documents so executed for this transaction.

The Parties warrant and represent that the entire agreement made between the Parties is contained within the executed documents, as amended and supplemented hereby, and that no agreements or promises exist between the Parties that are not reflected in the language of the various documents executed in conjunction with this transaction.

**THIS WRITTEN LEASE AGREEMENT REPRESENTS THE FINAL AGREEMENT
BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY
EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL
AGREEMENTS BETWEEN THE PARTIES**

**LESSEE**
Kentuckiana Medical Center, LLC
4601 Medical Plaza Way
Clarksville, IN 47129-

By: Dr. Badr Idbeis
Title: Manager

4.14.09
Date

By: Chris Stavens
Title: Manager

Date

APRIL 08, 2009
By: Cardiovascular Hospitals of America, L.L.C. - Member
Its: Manager - Badr Idbeis, M.D.

4.14.09
Date

By: Kentuckiana Investors, LLC - Member
Its: Manager & President – Chris S. Stavens, M.D.

April 08, 2009
Date

**LESSOR**
DivLend Equipment Leasing, L.L.C.
6625 West 19th Street, Suite 114
Lubbock, Texas 79407

By: Jeff Horn
Title: Vice President

4/10/09
Date



# INSURANCE LETTER OF AUTHORIZATION

April 7, 2009

DivLend Equipment Leasing, L.L.C.
6625 West 19th Street, Suite 114
Lubbock, Texas 79407

| Name of Insured | Insurance Company |
|---|---|
| | |
| Kentuckiana Medical Center, LLC | |
| (316) 648-3589 | (Fax) (          ) |

I hereby authorize DivLend Equipment Leasing, L.L.C. to contact _John Lawson_ with _HRH of Kansas, Inc._ and add all necessary coverage to our policy covering the equipment being leased by Kentuckiana Medical Center, LLC. This letter authorizes _John Lawson (316) 263-3211_ to provide DivLend Equipment Leasing, L.L.C. and/or its Assignee or any subsequent Assignees with a copy of the physical damage and general liability policies covering the items listed on the Lease. Each of these policies must be endorsed to show DivLend Equipment Leasing, L.L.C. as the **Loss Payee** and as the **Additional Insured**. A copy of the endorsement should be forwarded to:

DivLend Equipment Leasing, L.L.C.
6625 West 19th Street, Suite 114
Lubbock, Texas 79407
(806) 795-7782 (Fax) (806) 797-0601

**Endorsement must state:**
- ☐ Limits of liability for insured
- ☐ 30-day cancellation notice required
- ☐ **Loss Payee** should be **DivLend Equipment Leasing, L.L.C.**
- ☐ **Additional Insured** should be **DivLend Equipment Leasing, L.L.C.**
- ☐ Required property coverage for lease #2009055 is not less than **$3,927,996.99**.

## Equipment Description:

See Exhibit A

**Kentuckiana Medical Center, LLC**

By: _Paul E. Newms_



# EXHIBIT B

The Lessor and Lessee, hereinafter the Parties, have entered into a transaction generally described as Lease between Lessor and Lessee dated 4/7/2009. In conjunction with this transaction, the Parties have executed lease agreements and other related documents. The lease agreement requires a security deposit in the amount of $707,039.46 to be deposited by Lessee with Lessor. The security deposit will remain under the control of the Lessor during the life of the lease.

### LESSEE

**Kentuckiana Medical Center, LLC**
**4601 Medical Plaza Way**
**Clarksville, IN  47129**

_____
By: Dr. Badr Idbeis
Title: Manager

_____
Date

_____
By: Chris Stavens
Title: Manager

APRIL 10, 2009
_____
Date

_____
By: Cardiovascular Hospitals of America, L.L.C. – Member
Its: Manager – Badr Idbeis, M.D.

_____
Date

_____
By: Kentuckiana Investors, LLC – Member
Its: Manager & Chairman – Chris S. Stavens, M.D.

APRIL 10, 2009
_____
Date

### LESSOR

**DivLend Equipment Leasing, LLC**
**6625 W. 19th Street, Suite 114**
**Lubbock, TX  79407**

_____
By: Jeff Horn
Title: Vice President

4/21/09
_____
Date



# Property Tax Addendum

April 7, 2009

**To:**    DivLend Equipment Leasing, L.L.C.
6625 West 19th Street, Suite 114.
Lubbock, Texas 79407

**RE:**    Property tax on certain personal property leased from Lessor

Gentlemen:

As to the Equipment Lease # 2009055 dated 4/7/2009 by and between DivLend Equipment Leasing, L.L.C. ("Lessor") and Kentuckiana Medical Center, LLC ("Lessee") covering the following equipment:

See Exhibit A

1) The undersigned hereby agrees to file directly with all of the appropriate taxing authorities, a personal property declaration, for direct tax billing by the taxing authorities to the undersigned;
2) The undersigned further agrees to pay upon demand by Lessor any property tax assessed against any of said equipment, and the undersigned agrees to indemnify and hold Lessor harmless from and against any and all liability and damages which Lessor may incur by reason of the assessment of any such tax.

**Kentuckiana Medical Center, LLC**

By: _Paula Newsom_

Title: _CHIEF OPERATING OFFICER_

Date: _APRIL 08, 2009_



# Property Tax Addendum

April 7, 2009

**To:** DivLend Equipment Leasing, L.L.C.
6625 West 19th Street, Suite 114.
Lubbock, Texas 79407

**RE:** Property tax on certain personal property leased from Lessor

Gentlemen:

As to the Equipment Lease # 2009055 dated 4/7/2009 by and between DivLend Equipment Leasing, L.L.C. ("Lessor") and Kentuckiana Medical Center, LLC ("Lessee") covering the following equipment:

See Exhibit A

1) The undersigned hereby agrees to file directly with all of the appropriate taxing authorities, a personal property declaration, for direct tax billing by the taxing authorities to the undersigned;
2) The undersigned further agrees to pay upon demand by Lessor any property tax assessed against any of said equipment, and the undersigned agrees to indemnify and hold Lessor harmless from and against any and all liability and damages which Lessor may incur by reason of the assessment of any such tax.

**Kentuckiana Medical Center, LLC**

By: _Paul E Newsom_

Title: _CHIEF OPERATING OFFICER_

Date: _April 08, 2009_



# EXHIBIT A

**EQUIPMENT DESCRIPTION**

SIEMENS – Siemens PE Artis dTC – ceiling mounted cath lab – as noted on Quote # 1-9VXRFO v5 – S/N: 46160

Siemens AXIOM Sensis – hemodynamics monitoring – as noted on Quote #1-7JAMVFv9 – S/N: 20363

Siemens Luminos – R &F System – as noted on Quote #1-7IVAEF v11 – S/N: 1925

Siemens Mobilett – portable X-ray system – as noted on Quote #1-EDH4IN v1 - S/N: 3013

Siemens-Acuson S2000 – Ultrasound – as noted on Quote #1-E3185Q v1-dated 4-1-09 – S/N: 201197

Siemens-ARCADIS Avantic New Generation-as noted on Quote #1-E3321L-dated 3-30-09 – S/N: 32230

Siemens-CV/info/reporting system – as noted on Quote #1-E31050v1-DICOM SR Import, server-S/N:95346, Server, HP DL580 G5 – S/N: USE913N794, CD, v7.0, Workplace, Software – S/N:95346, Code, Reporting, Department – S/N:95346-1, CD, v7.0, Data Mining – S/N:50038 and CD,v7.0, Discrete Data Export – S/N:50020

DRAGER MEDICAL – Telemetry R2- as noted on Quotation #136010802-dated 4-2-09 –One (1)Telemetry – S/N: 5210474175 - Eight (8) Transmitter TruST – S/N: 5601098073, S/N: 5601097573, S/N: 5601096672,  S/N: 5601097867,  S/N: 5601097769, S/N: 5601097466, S/N: 5601099268 & S/N:5601098964

Two (2) ELX R2 – as noted on Quotation #136010793-dated 4-2-09 – Order #219232742 – S/N: ASAE-0115 & S/N: ASAE-0116/G93160 – Two (2) Trolley – S/N: ARZN-0132 & S/N: ARZN-0164

REV 2-as noted on Quotation #136010813-dated 4-2-09 – Three (3) Fabius GS – S/N: ASAE – 0082, S/N: ASAE – 0083 & S/N· ASAE – 0085 – Three (3) Scio Four – S/N: ASAE – 0044, S/N: ASAE – 0045, S/N: ASAE – 0046 & Three (3) VAPOR 2000 – S/N: ASAE – 0077, S/N: · 0078, & S/N: ASAE - 0079

ICU New Equipment R2- as noted on Quotation #136010798-dated 4-2-09 – One (1) Pods & Patient Accessories – S/N: ASAE-0541, Four (4) Hemo Med Pods – S/N: 5293827948, S/N: 5293830454, S/N: 5293830258 & S/N: 5293833255 – One (1) Multi Med 12 & Accessories – S/N: 5380655666 – Three (3) etCO2 Pods – S/N: SI0912002787, S/N: SI0912002795 & S/N: SI0912002767 – One (1) System Accessories – S/N: ASAE-0157 – Four (4) DevConnect # Protocol Converters – S/N: 5566722669, S/N: 5566925762, S/N: 5566928064 & S/N: 5566927956 – Ten (10) Infinity Docking Stations, MI – S/N: 5469572559, S/N: 5469566450, S/N: 5469552358, S/N: 5469552563, S/N: 5469554356, S/N: 5469552955, S/N: 5469569055, S/N: 5469545651, S/N: 5469540157 & S/N: 5469540950 – One (1) Infinity Central Station – S/N: 10996M00451, One (1) Network Recorder Kit – S/N: 5500541873, One (1) Work Station – S/N: 10996M00451 and UPS – S/N: 5S0832T39677

ICU Refurbished Rev 2 – as noted on Quotation #136010809-dated 4-2-09 – Ten (10) Delta Monitors Used – S/N: 5395550866, S/N: 5394941446, S/N: 5394960755, S/N: 5394967846, S/N: 5396096454, S/N: 5395053672, S/N: 5397125359, S/N: 5394991347, S/N: 5395103271 & S/N: 5395100773

OR New Equip R2- as noted on Quotation #136010817-dated 4-2-09 –Three (3) Pods and Patient Accessories S/N:



ASAF- 03S4, S/N: ASAF-0355, S/N: ASAF -0356 – Three (3) Infinity BISxKits – S/N: BX26445, S/N: BX26449 & S/N: BX2622G - Three (3) System Accessories – S/N: ASAF -0127. S/N: ASAF – 0128, and S/N: ASAF – 0129, - Three (3) R-50 Recorders – S/N: 5271059669, S/N: 5271059268 & S/N: 5271058572 - Three (3) Infinity Docking Stations, MI – S/N: 5469657254, S/N: 5469659350 & S/N: 5469670257

PACU New Equip R2-as noted on Quotation #136010822-dated 4-2-09 – One (1) System Accessories – S/N: ASAF-0182 - Six (6) Infinity Docking Stations, MI – S/N: 5469686552, S/N: 5467908752, S/N: 5469688648, S/N: 5469674253, S/N: 5469712061 & S/N: 5469704355 – One (1) Pods and Patients Accessories – S/N: ASAF-0997 – One (1) HemoMed Pod – S/N: 5293845750

OR Refurbished-Rev 2-as noted on Quotation #136010812-dated 4-2-09 – Three (3) Delta Monitors Used – S/N: 5399319948, S/N: 5395014866, &  S/N: 5395069762

PACU Refurbished Rev 2-as noted on Quotation #136010810-dated 4-2-09 – Five (5) Delta Monitors Used – S/N: 539555264, S/N: 5394975249, S/N: 539499241, S/N: 5395031865 & S/N: 539002674


CDW-G – Four (4) Hand Held 3800G USB Kit Imager-#1046699 – S/N: 09085D1126, 09085D20FA, 09085D20F1, 09085D211E, Five (5) Zebra ZM400 203DPI, 10/100 DT/TT-#1307383 – S/N: 08C08491846, 08C08491849, 08C08491865, 08C09190023, 08C09190029, Six (6) HP LJ P4515X-#1436076, Thirty-five (35) ACER V223W8D 22" Wide DVI-#1442704 – S/N: ETLBQ0C011911174A44013, ETLBQ0C0119111754D4013, ETLBQ0C011911179F94013, ETLBQ0C01191118BA04013, ETLBQ0C01191118BA24013, ETLBQ0C01191118B5B4013, ETLBQ0C01191118B884013, ETLBQ0C01191118B9A4013, ETLBQ0C01191118B9B4013, ETLBQ0C01191118B9C4013, ETLBQ0C01191118B904013, ETLBQ0C01191118B944013, ETLBQ0C01191118B984013, ETLBQ0C011911186F34013, ETLBQ0C0119111187DD4013, ETLBQ0C0119111187ED4013, ETLBQ0C011911187EF4013, ETLBQ0C011911187E14013, ETLBQ0C011911187E24013, ETLBQ0C011911187E34013, ETLBQ0C01191187FC4013, ETLBQ0C01191187FD4013, ETLBQ0C011911187F64013, ETLBQ0C011911187F94013, ETLC30801190912F7C4265, ETLC30801190912F7E4265, ETLC30801190912F7F4265, ETLC30801190912F784265, ETLC30801190912F8A4265, ETLC30801190912F814265, ETLC30801190912F824265, ETLC30801190912F834265, ETLC30801190912F844265, ETLC30801190912F904265 and ETLC30801190912F914265, Six (6) FUJITSU FI-6130 CLR DPLX 40PPM/30PPM – S/N: 078031, S/N: 078037, S/N: 078039, S/N: 078053, S/N: 078058, S/N: 078063, One (1) Canon DR 2580C Scanner – S/N: 80800292AG21DG3471, Six (6) HP LJ P4515X – S/N: SCNDY157810, S/N: SCNDY159543, S/N: SCNDY169227, S/N: SCNDY350207, S/N: SCNDY351715 & S/N: SCNDY351723 - Ten (10) MS MBL Office Pro Plus 2007-#1066023, Thirty-five (35) MS MBL WIN SRV UCAL 2008-#1418222
Thirty-five (35) ACER V223WBD 22" Wide DVI – S/N: 91105194442, 91105194542, 91105194642, 91105194742, 91105195242, 91105195442, 91105196042, 91105196442, 91105196542, 91105196642, 91105224442, 91105252442, 91105297742, 91105300842, 91105315142, 91105315242, 91105323342, 91105323442, 91105323642, 91105323842,91105323942, 91105324242, 91105324342, 91507098842, 91507102342, 91507102542, 91507102642, 91507102842, 91507102942, 91507103042, 91507103142, 91507103242, 91507103342, 91507103442 and 91507103642.


MSI SYSTEMS INTEFRATORS, INC. – Unified Communications and Network Installation – as noted on Proposal #67454/1- dated 3-3-09 –



One (1) – CatalystChassis+Fan Tray+Sup720-10G; IP Base ONLY; NO VSS - One (1) – Cisco CAT6000-VSS720 IOS IP BASE SSH LAN ONLY (MODULAR) - One (1) - SP Adapter with compact flash for SUP720

One (1) – Catalyst 6500 Sup720/Sup32 Compact Flash Mem 512MB - One (1) – C6K 8 port 10 Gigabit Ethernet module with DFC3C (req. X2) - Two (2) - Catalyst 6500 3000W AC power supply Two (2) – Power Cord, 250Vac 16A, twist lock NEMA l6-20 plug, US One (1) – Cat 6500 Supervisor 720 with 2 ports 10GbE and MSFC3 PFC3C - One (1) – Catalyst 6500 Multilayer Switch Feature Card (MSFC) III - One (1) – Catalyst 6500 Sup 720-10G Policy Feature Card 3C One (1) – Catalyst 6500 Supervisor 720 with 2 10GbE ports One (1) – Catalyst 6500 Compact Flash Memory 1GB -One (1) – Bootflash for SUP720-64MB-RP- One (1) - Catalyst 6500 Dist Fwd Card for WS-X67xx modules - One (1) - Cat6500 8 port 10 Gigabit Ethernet module (req. DFC and X2) - One (1) - Catalyst 6509-E Chassis Fan Tray - One (1) - ONSITE 24X7X4 VS-C6509E-S720-10G – S/N: DCH12351062, S/N: SAL1313MAPK, S/N: SAL1316N8GS, S/N: SAL1316NDSE, S/N:1316NF44, S/N:1317NQSX, S/N: SMG1316NH6R, S/N: SNI1303AW6C & S/N: SNI1303AWFY Four (4) - Catalyst 3750E 48 10/100/1000 PoE+2*10GE (X2), 1150W, IPB s/w- S/N: FDO1316R00K, S/N: FDO1316R009, S/N:FDO1317R11G & S/N: FDO1317R11F - Four (4) - CAT 3750E IOS UNIVERSAL WITH WEB BASE DEV MGR - Four (4) - Cisco StackWise 50CM Stacking Cables – S/N: FDO13170801, S/N: FDO13170884, S/N:FDO13170EU5, S/N:FDO13170FFG, S/N: FDO131707WH, S/N: FDO131708AE, S/N: FDO131609U2 & S/N: FDO1317035P - Four (4) - AC Power cord, 16AWG - Eight (8)-  Cisco TwinGig Converter Module - Four (4) – ONSITE 24X7X4 WS-C3750E-48-PD-SF

One (1) - 10GBASE-CX4 X2 Module – S/N: OSG13022886 - Two (2) - 10GBASE-LX4 X2 Module – S/N: HCT13030229 & S/N: HCT13030241 - One (1) - ASA 5510 Appliance with SW, 5FE,3DES/AES – S/N: JMX1318LGUW - One (1) - Power Cord, 110V - One (1) - ASA 5500 Series Software v8.0 - One (1) - ASA 5510 Security Plus License w/HA, GE, more VLANs + cons - One (1) – ASA 5500 SSL VPN 10 User License

One (1) – Cisco VPN Client Software (Windows, Solaris, Linux, Mac) - One (1) – ASA/IPS SSM Slot Cover One (1) – ASA 180W AC Power Supply - One (1) – ASA 5500 AnyConnect Client + Cisco Security Desktop Software - One (1) - ASA 5500 Strong Encryption License (3DES/AES) - One (1) – ONSITE 24X7X4 ASA5510 w/50 VPN Peers, 3FE, 3DES/AES - One (1) – Cisco Secure ACS 4.X Solution Engine 1113 Appliance – S/N: QCF131900IU - One (1)  - Power Cord, 110V - One (1) – Config Option: ACS 4.2 software loaded on 1113 - One (1) SW APP SUPP CiscoSecureACS 4.0 SolutionEng1113Appliance

One (1) – SW APP SUPP Config.Option: CSACS4 0Software loaded on Cisco 1113

One (1) - ONSITE 24X7X4 Cisco SecureACS 4.0 SolutionEng 1113 ApplianceOne - Thirty (30) 802.11 a/g/n-d 2.0 2.4/5-GHz Mod Unified AP; 6 RP-TNC; FCC – S/N: FTX131890X6, S/N: FTX 131890X7, S/N: FTX131890X9, S/N: FTX131890XC, S/N: FTX131890XS, S/N: FTX131890X8, S/N: FTX131890XB, S/N: FTX131890XA, S/N: FTX131890XD, S/N: FTX131890XH, S/N: FTX131890XL, S/N: FTX131890XE, S/N: FTX131890XF, S/N: FTX131890XP, S/N: FTX131890XT, S/N: FTX131890XG, S/N: FTX131890XJ, S/N: FTX131890XN, S/N: FTX131890XQ, S/N: FTX131890XM, S/N: FTX131890XR, S/N: FTX131890XU, S/N: FTX131890XY, S/N: FTX131890XV, S/N: FTX131890XW, S/N: FTX131890XZ, S/N: FTX131890YO, S/N: FTX131890XS, S/N: FTX131890XX Ninety (90) – 2.4 GHz 2.2 dBi Dipole Straight Antenna RP-TNC Gray Qty 1 - Ninety (90) – 5-GHz 3.5 dBi Dipole Straight Antenna RP-TNC Gray Qty 1 - Thirty (30) – Cisco 1250 Series IOS WIRELESS LAN LWAPP RECOVERY - Thirty (30) – SMARTNET 8X5XNBD 802,11a/g/n-d2.0 2.4/5-GHz Mod Unified A – One (1) 4400 Series WLAN Controller for up to 50 Lightweight APs and accessories – S/N: FOC1316F037 One (1) – Cisco Unified WLAN Controller SW Release 5.1 – ED One (1) – Cisco Unified WLAN Controller Emergency SW Release 5.0 One (1) – SMARTNET 8X5XNBD 4402-50 WLAN Controller Two (2) – 1000BASE-T SFP One (1) – 2821 Voice Bundle, PVDM2-32, SP Serv, 64F/256D One (1) – Power cord, 110V One (1) – 256 to 512 MB DDR DRAM factory upgrade for the Cisco 2821 One (1) – 64 to 256 MB CF Factory Upgrade for Cisco 2800 Series

One (1) – PVDM2 32 channel to 64-channel factory upgrade One (1) – 1-Port 2nd Gen Multiflex Trunk Voice/WAN Int. Card – T1/E1 One (1) – Cisco 2800 SP SERVICES One (1) – Cisco 2821/51 AC power supply One (1) – CD for SDM software One (1) – Cisco 2821/51 Standard Accessory Kit One (1) – ONSITE 24X7X4 2821 Voice Bundle, PV – Thirty-



five (35) CISCO IP Phones 7911G – S/N: FCH1307AGK3, S/N: FCH1307AJ9L, S/N: FCH1307AJND, S/N: FCH1307AK0H, S/N: FCH1307AKWL, S/N: FCH1307AP3N, S/N: FCH1307AP3U, S/N: FCH1307AP48, S/N: FCH1307AP4B, S/N: FCH1307AP6N, S/N: FCH13079TT8, S/N: FCH13079VD0, S/N: FCH1307AEYY, S/N: FCH1307AGNP, S/N: FCH1307AJ3S, S/N: FCH1307AJ4P, S/N: FCH1307AEJ, S/N: FCH1307AJL4, S/N: FCH1307AP7K, S/N: FCH130796ZR, S/N: FCH1307976D, S/N: FCH1307978G, S/N: FCH13079WL6, S/N: FCH1307AGJB, S/N: FCH1307AJPS, S/N: FCH1307AJSO, S/N: FCH1307AJSP, S/N: FCH1307AJU2, S/N: FCH1307AKKV, S/N: FCH1307AGLE, S/N: FCH1307AJ3G, S/N: FCH1307AJSL, S/N: FCH1307AKBG, & S/N: FCH1307AKNA Thirty-five (35) SMARTNET 8X5XNBD Cisco IP Phones 7911 – Fifteen (15) CISCO Unified IP Phones 7965, Gig Ethernet, Color – S/N:FCH13069NWZ, S/N: FCH13069NX3, S/N: FCH13069PC3, S/N: FCH13069PEC, S/N: FCH13069PM8, S/N: FCH13078LE4, S/N: FCH13078LVQ, FCH13078S81, S/N: FCH13068MGA, S/N: FCH13069P7Y, S/N: FCH13069P8K, S/N: FCH13069PMU, S/N: FCH13078RW3, S/N: FCH13078S5Y, & S/N: FCH13078S6U Fifteen (15) SMARTNET8X5XNBD Cisco Unified IP Phones 7965 – Six (6) CISCO Unified IP Phones 7975, Gig Ethernet, Color – S/N: FCH1252A0PU, S/N: FCH1252A0RU, S/N: FCH1252A0V0, S/N: FCH1252A0YA, S/N: FCH1252A18K, & S/N: FCH1252A20C – Six (6)  SMARTNET 8X5XNBD Cisco Unified IP Phones 7975 - One (1) CISCO IP Conference Station 7937 GLOBAL – S/N: 0004F2E60A81 – One (1) SMARTNET 8X5XNBD Cisco IP Conference Station 7937 Global – One (1) IP Phone power transformer for the 7900 phone series. - Two (2) 7916 IP Phone Color Expansion Module – S/N: FCH13158XH3 & S/N: FCH13158YFX – One (1) Footstand Kit for 2 7914s, 7915s, &7916s – One (1) Unity Release 7 and accessories – S/N: 1167J6CS76D – One (1) 7825-I3 for CISCO Unity and accessories – S/N: KQLWCX – ONSITE 24X7X4 7825-13 for Cisco Unity – One (1) UCSS for Unity – S/N: 1321J7DE118 – Fifty (50) Unity UCSS VM/UM User One Year One User – One (1) CUCM 7.0 top level part number - One (1) HW/SW MCS 7825-I3 Unified CM 7.0 Appliance & accessories – S/N: KQMCAHD – One (1) License CM 7.0 7825 Appliance 1,000 seats – S/N: 115J7D7FA8 – One (1) ESSENTIAL SW Lic MC7.0 7825 Appliance 1,000 Seats – One (1) Top level part number for Unified CM Device Licenses – S/N: BUNDLE87379291 – Twenty-five (25) Unified CM Device License – 10 units – One (1) Cisco Unified CM 6.X DL PAK – One (1) Top level SKU, Unified CallManager Software Subscription – S/N: 1321J6FD101 – Six (6) UCSS for UCM for One Year – 10 users – One (1) Hardware Security Key for CCM Admin, Release 4.0 or Greater – S/N: ADN5D67D514 – ONSITE 24X7X4 HW/SW MCS782513 Unified CM7.0 Appliance – Three (3) CISCO VG202 Analog Voice Gateway & accessories – S/N: FCH1248S056, S/N: FCH1248S088 & S/N: FCH1248S04S – One (1) ONSITE 24X7X4 Cisco VG202 Analog Voice Gateway - One (1) 48 Port Voice over IP analog phone gateway and accessories – S/N: SAD130800BM – Two (2) 1000 BASE-T SFP – S/N: MTC130706FD & S/N: MTC130706FJ

DELL – Thirty-five (35) Opti 360, Desktop Base – as noted on Quote #482232853- Order #722512831, #7222512815, and #722512732 – S/N: 44415J1, 44405J1, 44425J1, 444M4J1, 444V5J1, 444N4J1, 444N5J1, 444P4J1, 444P5J1, 444Q4J1, 444Q5J1, 444R4J1, 444R5J1, 444S4J1, 444S5J1, 444T4J1, 444T5J1, 444V4J1, 444M5J1, 44365J1, 443N5J1, 44385J1, 44395J1, 443B5J1, 443C5J1, 443D5J1, 443F5J1, 443G5J1, 443H5J1, 443J5J1, 443K5J1, 443L5J1, 443M4J1, 443M5J1, 44375J1.

One (1) Quad Core Xeon X5450 Processor 2x6MB Cache, 3.0GHz, 1333MHz PE2900- as noted on Quote #482233602 – Order #72252S420 – S/N: 2RQ9TJ1 – Order #722643222 - Software

One (1) Quad Core Xeon X5450 Processor2x6MB Cache, 3.0GHz, 1333MHz PE2900- as noted on Quote #482234094 – Order #722513185 – S/N: JR7JTJ1

One (1) PowerVault TL2000, 2U Library, LTO3-60 Half-Height, 1 SAS Drive – as noted on Quote #482234430 – Order #722513664 – S/N: 888D3H1



One (1) Dell 4210 42U Rack with Doors and Side Panels, Ground Ship NOT for AK/HI- as noted on Quote #482235603 - Order #722514S22 – S/N: C02HTJ1

Five (5) Quad Core Xeon E5410 Processor2x6MB Cache, 2.33GHz, 1333MHz FSB, PE 1950- as noted on Quote #482309595 dated 4-8-09 – Four (4) Order #72251492 and One (1) Order #722514993 – S/N: HYZ9TJ1, 3ZZ9TJ1, 2ZZ9TJ1, 1ZZ9TJ1 and DKW9TJ1

One (1) Latitude E6500, Intel Core 2Duo P8700 – S/N: D2H69K1, One (1) Meridian Roller Laptop Case – Item #A1734721, Five (5) Office Professional Plus 2007 – Item #A0767073, & Six (6) USB Style Server Interface Pod Power Edge Customer Kits – Item #310-5680 – Eight (8) Opti 360, Desktop Base – S/N: C0DV9K1, S/N: F0DV9K1, S/N: G0DV9K1, S/N: 71DV9K1, S/N: 11DV9K1, S/N: 31DV9K1, S/N: 41DV9K1, & J0DV9K1 – One (1) 16 Port Keyboard/Video/Mouse Analog Switch, 2160AS – S/N: 432QHH1 - One (1) Operating License  - S/N: 655368042ZS1106- Four (4) 12 Amp, NEMA, Standard Power Strips, 120V


HEALTHLAND – Total System – 8204-E8A IBM Power Systems – S/N: 10-61A82, 9910-E65 IBM UPS – S/N: 10-R4HNC, 5765-G03 AIX 5L Operating System – S/N: CLARKSVILLE-AIX,  5765-PVX Power VM Express – S/N: CLARKSVILLE-PVX, 5692-A5L CDR AIX Media – S/N: CLARKSVILLE-CDR , DB2 Version 8.2 Unlimited User – S/N: CLARKSVILLE-DB2, C for AIX IBM Software – S/N: CLARKSVILLE-C/AIX, Blank Tapes (set of 10) – S/N: LTO3-12, Blank Tapes (set of 10) – S/N: LTO3-15, AVOCENT LCD17SWT8-001- S/N: 0320018194, IBM/APC 25U Rack "Tripp Lite" – S/N: CLARKSVILLE-25U, PDU1230 Tripp Lite PDU – S/N: CLARKSVILLE-PDU, Crystal Reports V XI.2 – S/N: 5 User New, x3500 7977-M2UxSeries Server – S/N: KQ-FXZDV, W2008 Server w/25 – S/N: CLARKSVILLE-W2008, BACKUP EXEC. SOFTWARE – S/N: BACKUP54A, DAC Drivers 25 – Users – S/N: CLARKSVILLE-DAC25, V. Everything Modem – S/N: 4MBRY9A10746

BYTESPEED – Eleven (11) ByteSpeed Value D41TY and accessories – S/N: 2010-01-0514, S/N: 2010-01-0515, S/N: 2010-01-0516, S/N: 2010-01-0517, S/N: 2010-01-0518, /S/N: 2010-01-0519, S/N: 2010-01-0520, S/N: 2010-01-0521, S/N: 2010-01-0522, S/N: 2010-01-0523, S/N: 2010-01-0524.



# Lease Purchase Addendum
# 2009055 - 1

## Presented by

## DivLend Equipment Leasing, L.L.C.

## to

## Kentuckiana Medical Center, L.L.C.



## LEASE-PURCHASE ADDENDUM
## APPENDED TO LEASE #2009055

THIS IS A LEASE-PURCHASE MASTER AGREEMENT ADDENDUM (hereinafter referred to as "Addendum") by and between DivLend Equipment Leasing, L.L.C., a Texas Limited Liability Company (hereinafter referred to as "Lessor"), and Kentuckiana Medical Center, L.L.C. (hereinafter referred to as "Lessee".)

WITNESSETH:  In consideration of the mutual covenants and conditions hereinafter set forth and to accommodate a payment schedule change to Lessee's lease dated April 7, 2009, lease number 2009055, the parties hereto agree as follows:

1    Amendments to the Equipment Schedule.  Lessee acknowledges that all terms and conditions of the original Lease Agreement # 2009055, dated April 7, 2009, will remain in effect and are binding upon Lessee.

2.   Term and Payments.  Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the property described below hereto (hereinafter, with all replacement parts, substitutions, proceeds, increases, additions, accessions, repairs and accessories incorporated therein or affixed thereto, referred to as the "Property") for the amounts to be paid in the sums (the "Lease Payments") and on the dates (the "Lease Payment Dates") set forth in Payment Description hereto. The obligation of the Lessee to make the Lease Payments called for in Payment Description hereto shall be absolute and unconditional in all events and shall not be subject to any set-off, defense, counterclaim or recoupment for any reason.

3.   ACCEPTANCE:  In accordance with the Addendum, Lessee hereby certifies that all of the property described herein (i) has been received by Lessee, (ii) has been thoroughly examined and inspected to the complete satisfaction of Lessee, (iii) has been found by Lessee to be in good operating order, repair and condition, (iv) has been found to be of the size, design, quality, type and manufacture specified by Lessee, (v) has been found to be and is wholly suitable for Lessee's purpose, and (vi) is hereby unconditionally accepted by Lessee, in the condition received, for all purposes of the Agreement.

| LESSEE | LESSOR |
|---|---|
| Kentuckiana Medical Center, L.L.C.<br>4601 Medical Plaza Way<br>Clarksville, IN  47129 | DivLend Equipment Leasing, L.L.C<br>6625 W. 19th Street, Suite 114<br>Lubbock, TX  79407 |
| By:  Dr Chris Stavens<br>Title:  C.E.O | By:  Jeff Horn<br>Title:  Vice President |
| Date: 4-30-10 | Date: 4/30/10 |

# EXHIBIT A-1
## APPENDED TO LEASE #2009055

## Description of Equipment

Equipment                    See Exhibit A

PROPERTY LOCATION:        4601 Medical Plaza Way, Clarksville, IN  47129

LESSEE                                          LESSOR

Kentuckiana Medical Center, L.L.C.              DivLend Equipment Leasing, L.L.C.
4601 Medical Plaza Way                          6625 W. 19th Street, Suite 114
Clarksville, IN  47129                          Lubbock, TX  79407

By: Dr. Chris Stavens                           By: Jeff Horn
Title:  C.E.O.                                   Title:  Vice President

4-30-10                                          4/30/10

Date:                                            Date:



# EXHIBIT B-1
## APPENDED TO LEASE #2009055

Schedule of Periodic Rental Payments:

A payment in the amount of $30,000.00 is due at the signing of the addendum, followed by three (3) monthly payments in the amount of $30,000.00 beginning May 15th, 2010 continuing monthly through July 15th, 2010, followed by forty-nine (49) monthly payments in the amount of $86,343.23 beginning August 15th, 2010 and continuing monthly thereafter.

LESSEE

Kentuckiana Medical Center, L.L.C.
4601 Medical Plaza Way
Clarksville, IN 47129

By: Dr. Chris Stavens
Title: C.E.O.

4-30-10
_____
Date

LESSOR

DivLend Equipment Leasing, L.L.C.
6625 W. 19th Street, Suite 114
Lubbock, TX 79407

By: Jeff Horn
Title: Vice President

4/30/10
_____
Date:



## EXHIBIT A

**EQUIPMENT DESCRIPTION**

SIEMENS – Siemens PE Artis dTC – ceiling mounted cath lab – as noted on Quote # 1-9VXRFO v5 – S/N: 46160

Siemens AXIOM Sensis – hemodynmics monitoring – as noted on Quote #1-7JAMVFv9 – S/N: 20363

Siemens Luminos – R &F System – as noted on Quote #1-7IVAEF v11 – S/N: 1925

Siemens Mobilett – portable X-ray system – as noted on Quote #1-EDH4IN v1 - S/N: 3013

Siemens Acuson S2000 – Ultrasound – as noted on Quote #1-E3185Q v1-dated 4-1-09 – S/N: 201197

Siemens ARCADIS Avantic New Generation-as noted on Quote #1-E3321L-dated 3-30-09 – S/N: 32230

Siemens CV/info/reporting system – as noted on Quote #1-E31050v1-DICOM SR Import, server-S/N:95346, Server, HP DL580 GS – S/N: USE913N794, CD, v7.0, Workplace, Software – S/N:95346, Code, Reporting, Department – S/N:95346-1, CD, v7.0, Data Mining – S/N:50038 and CD,v7.0, Discrete Data Export – S/N:50020

DRAGER MEDICAL – Telemetry R2- as noted on Quotation #136010802-dated 4-2-09 –One (1)Telemetry – S/N: 5210474J75 – Eight (8) Transmitter TruST – S/N: 5601098073, S/N: 5601097573, S/N: 5601096672, S/N: 5601097867,  S/N: 5601097769, S/N: 5601097466, S/N: 5601099268 & S/N:5601098964

Two (2) ELX R2 – as noted on Quotation #136010793-dated 4-2-09 – Order #219232742 – S/N: ASAE-0115 & S/N: ASAE-0116/G93160 – Two (2) Trolley – S/N: ARZN-0132 & S/N: ARZN-0164

REV 2-as noted on Quotation #136010813-dated 4-2-09 – Three (3) Fabius GS – S/N: ASAE – 0082, S/N: ASAE – 0083 & S/N: ASAE – 0085 – Three (3) Scio Four – S/N: ASAE – 0044, S/N: ASAE – 0045, S/N: ASAE – 0046 & Three (3) VAPOR 2000 – S/N: ASAE – 0077, S/N: - 0078, & S/N: ASAE - 0079

ICU New Equipment R2- as noted on Quotation #136010798-dated 4-2-09 – One (1) Pods & Patient Accessories – S/N: ASAE-0541, Four (4) Hemo Med Pods – S/N: 5293827948, S/N: 5293830454, S/N: 5293830258 & S/N: 5293833255 – One (1) Multi Med 12 & Accessories – S/N: 5380655666 – Three (3) etCO2 Pods – S/N: SI0912002787, S/N: SI0912002795 & S/N: SI0912002767 – One (1) System Accessories – S/N: ASAE-0157 – Four (4) DevConnect # Protocol Converters – S/N: 5566722669, S/N: 5566925762, S/N: 5566928064 & S/N: 5566927956 – Ten (10) Infinity Docking Stations, MI – S/N: 5469572559, S/N: 5469566450, S/N: 5469552358, S/N: 5469552563, S/N: 5469554356, S/N: 5469552955, S/N: 5469569055, S/N: 5469545651, S/N: 5469540157 & S/N: 5469540950 – One (1) Infinity Central Station – S/N: 10996M00451, One (1) Network Recorder Kit – S/N: 5500541873, One (1) Work Station – S/N: 10996M00451 and UPS – S/N: 5S0832T39677

ICU Refurbished Rev 2 – as noted on Quotation #136010809-dated 4-2-09 – Ten (10) Delta Monitors Used – S/N: 5395550866, S/N: 5394941446, S/N: 5394960755, S/N: 5394967846, S/N: 5396096454, S/N: 5395053672, S/N: 5397125359, S/N: 5394991347, S/N: 5395103271 & S/N: 5395100773

OR New Equip R2- as noted on Quotation #136010817-dated 4-2-09 –Three (3) Pods and Patient Accessories S/N:

